JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Francis,<br>                Plaintiff,<br>v.<br>David Shinn, et al.,<br>                Defendants. | No.   CV 22-02071-PHX-JAT (DMF)<br><br>**ORDER** |

      Plaintiff James Francis, who is confined in the Arizona State Prison Complex-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Emergency Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 2). Plaintiff did not pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis. The Court will give Plaintiff 30 days to pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis. The Court will dismiss Defendant "Veteran Administration (Tucson)"; order expedited service on Defendants NaphCare and Shinn and order them to answer the Complaint and respond to the Motion on an expedited basis; and order Defendants Centurion, Stewart, and Thomas to answer the Complaint.

**I.    Payment of Filing Fee**

      When bringing an action, a prisoner must either pay the $350.00 filing fee and a $52.00 administrative fee in a lump sum or, if granted the privilege of proceeding in forma pauperis, pay the $350.00 filing fee incrementally as set forth in 28 U.S.C. § 1915(b)(1).

JDDL

An application to proceed in forma pauperis requires an affidavit of indigence and a *certified* copy of the inmate's trust account statement (or institutional equivalent) for the six months preceding the filing of the Complaint. 28 U.S.C. § 1915(a)(2). An inmate must submit statements from each institution where he was confined during the six-month period. *Id.* To assist prisoners in meeting these requirements, the Court requires use of a form application. LRCiv 3.4.

If a prisoner is granted leave to proceed in forma pauperis, the Court will assess an initial partial filing fee of 20% of either the average monthly deposits or the average monthly balance in Plaintiff's account, whichever is greater. 28 U.S.C. § 1915(b)(1). An initial partial filing fee will only be collected when funds exist. 28 U.S.C. § 1915(b)(4). The balance of the $350.00 filing fee will be collected in monthly payments of 20% of the preceding month's income credited to an inmate's account, each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2).

Because Plaintiff has not paid the $402.00 filing and administrative fees or filed an Application to Proceed In Forma Pauperis, the Court will give Plaintiff 30 days from the filing date of this Order to submit a properly executed and certified Application to Proceed In Forma Pauperis, using the form included with this Order, or pay the $402.00 filing and administrative fees.

The Arizona Department of Corrections (ADC) has notified the Court that a certified trust fund account statement showing deposits and average monthly balances is available from the ADC's Central Office. *Accordingly, Plaintiff must obtain the certified copy of his ADC trust fund account statement for the six months immediately preceding the filing of the Complaint from the ADC's Central Office*.

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.   Discussion of Complaint**

In his six-count Complaint, Plaintiff sues Arizona Department of Corrections, Rehabilitation and Reentry (ADC) Director David Shinn, current contracted healthcare provider NaphCare Incorporated ("NaphCare"), former contracted healthcare provider Centurion of Arizona LLC ("Centurion"), Doctor Rodney Stewart, Nurse Practitioner (NP)

Siji Thomas,[1] and "Veteran Administration (Tucson)." Plaintiff asserts claims regarding his medical care. He seeks an emergency preliminary injunction for immediate medical treatment and evaluation for his cancer, monetary relief, and his costs and fees for this case.

Plaintiff alleges the following facts applicable to each count:

On January 11, 2022, Plaintiff alerted prison staff that he was urinating blood. Staff came to the restroom, saw Plaintiff's blood in the toilet, and activated an emergency Incident Command System. Plaintiff was taken to Cook Unit's medical department, where he was evaluated by medical staff. Medical staff told Plaintiff it was "normal to have bleeding from cancer" and that his condition would be closely monitored.

Defendant Thomas evaluated Plaintiff and told him that she did not believe his cancer was causing him to urinate blood and that she "felt that it was normal for males to sometime[s] bleed" while urinating due to injury, rather than cancer. Plaintiff told Defendant Thomas that he had not suffered an injury and asked her to send him to the hospital to "see what is happening to him." Defendant Thomas told Plaintiff she would approve a hospital visit if he urinated blood three days consecutively, but his bleeding had stopped at that time, and he could return to his unit. Plaintiff asked Defendant Thomas about his cancer consultation, and Thomas told him that she was "waiting to see if [his] condition would wors[]en" and that she did not believe his cancer was "deadly at this point."

On February 22, 2022, Plaintiff complained to prison staff that he was having heart problems and pain in his chest and stomach and needed to see medical staff. Plaintiff was taken to Cook Unit for medical evaluation. Medical staff told Plaintiff his chest pain was due to his cancer and that he would experience this type of pain until "they" got his cancer under control. Defendant Thomas conducted an EKG and told Plaintiff the EKG showed he was having "heart problems," but she would "just monitor him to see if his condition wors[]en[ed]." Plaintiff asked Defendant Thomas to schedule him to see a cardiologist.

---

[1] Defendants Stewart and Thomas previously worked for Centurion when it was the contracted healthcare provider and were hired by NaphCare when it became the healthcare provider.

Defendant Thomas told him that the pain he was experiencing was "normal" because of his "suspected cancer" and that she would continue to monitor his condition.

Subsequently, Plaintiff's cancer spread to his gall bladder. On July 5, 2022, Plaintiff experienced intense pain and complained to prison staff that he was again urinating blood. Staff saw the blood in the toilet, and Plaintiff was taken to Cook Unit. Defendant Thomas evaluated Plaintiff and told him that his gall bladder was infected and that it was "possible" the cancer had spread to his gall bladder. Defendant Thomas told Plaintiff she would submit a request for an evaluation at the Cancer Center, which would take at least two to three months for approval. Plaintiff told Defendant Thomas his condition warranted emergency treatment, and Thomas responded that his cancer would not "kill him in 2-3 months."

On September 7, 2022, Defendant Thomas called Plaintiff to the medical unit. Defendant Thomas was "angry" and told Plaintiff to stop submitting health needs requests (HNRs) that stated he had leukemia because the type of cancer Plaintiff had had not been determined. Defendant Thomas also told Plaintiff that if he did not stop using the word "leukemia," he would receive a disciplinary ticket for lying to medical and prison staff. Plaintiff asked Defendant Thomas about the status of his cancer evaluation. Defendant Thomas told Plaintiff the request was still under review.

On September 10, 2022, Defendant Thomas called Plaintiff to the medical unit and told him that Defendant Stewart had cancelled a consultation with a urologist for Plaintiff's cancer. Defendant Thomas told Plaintiff that Defendant Stewart had advised Thomas that Centurion would no longer be the medical provider for ADC prisoners as of October 1, 2022, and that Plaintiff would have to wait for his cancer evaluation until the new provider took over.[2]

On September 13, 2022, Plaintiff again urinated blood and alerted medical staff that

---

[2] Elsewhere in the Complaint, Plaintiff alleges he asked Defendant Thomas why the consultation was canceled, and Thomas responded that "they can cancel by policy any outside medical consultation," that Plaintiff would not be told the reason for the cancellation due to security concerns, and that the consultation would be rescheduled as soon as possible.

he needed medical attention. Staff again saw the blood in the toilet and again took him to Cook Unit for evaluation. Defendant Thomas evaluated Plaintiff and had him urinate in a cup. Plaintiff went to the restroom and came back with a "cup of blood." Defendant Thomas had Plaintiff wait at the medical unit for six hours and urinate in a cup every two hours. The third time Plaintiff urinated, there was still blood in his urine. Plaintiff was told his "PSA" blood test "show[ed] cancer,"[3] but Plaintiff would have to "wait until the new medical provider comes" on October 1, 2022.[4]

On October 1, 2022, Defendant NaphCare took over the healthcare contract. Sometime in October 2022, Defendant Thomas called Plaintiff to Cook Unit and told him that she would no longer be his provider because Defendant NaphCare was transferring her to Meadows Unit. Defendant Thomas told Plaintiff that NP Adams would work with Plaintiff regarding his cancer screening. Since then, Defendant NaphCare has not scheduled a cancer evaluation for Plaintiff, and NP Adams has told Plaintiff that she has "done all she can do" to obtain approval from NaphCare's medical board for a cancer consultation.

In Count One, Plaintiff alleges that Defendant Shinn has established medical policies, rules, regulations, and customs with respect to prisoner medical care that allowed Defendant Centurion to "do alternate treatments" for prisoners who are suspected to have cancer or cancer-related illness and to "determine [the] cost of any cancer treatment" before recommending outside cancer specialist care. Plaintiff asserts that because of Defendant Shinn's policies, Plaintiff has been "denied outside cancer diagnosis for his prostate, kidney, legs[,] etc.," and medical staff do not know what type of cancer Plaintiff has. Liberally construed, Plaintiff states an Eighth Amendment medical care claim against

---

[3] A PSA test is used primarily to screen for prostate cancer. *See* https://www.mayoclinic.org/tests-procedures/psa-test/about/pac-20384731 (last visited Dec. 8, 2022).

[4] Plaintiff also alleges that on September 13, 2022, "Centurion medical staff" told Plaintiff that his cancer consultation was not approved because Centurion was "leaving" on October 1, 2022, his cancer was "not that bad," and that if his cancer were serious, his condition would worsen. Plaintiff asserts that he argued with medical staff that urinating blood is not only serious but also life-threatening.

Defendant Shinn in his official capacity only.

In Count Two, Plaintiff alleges that Defendant Centurion failed to provide Plaintiff with cancer treatment based on Centurion's policies, customs, rules, and regulations that require consideration of the cost of treatment in determining whether Plaintiff receives cancer treatment. Liberally construed, Plaintiff states an Eighth Amendment claim against Defendant Centurion.

In Count Three, Plaintiff alleges that Defendant Thomas denied him a consultation, evaluation, and treatment for his cancer in accordance with ADC and Defendant Centurion's policies, rules, and regulations. Plaintiff asserts that Defendant Thomas placed Plaintiff on an alternate treatment plan, that is, that Plaintiff's condition would be monitored rather than immediately treated. Liberally construed, Plaintiff states an Eighth Amendment medical care claim against Defendant Thomas.

In Count Four, Plaintiff alleges that Defendant Stewart violated Plaintiff's Eighth Amendment rights when Stewart cancelled Plaintiff's urologist consultation on September 10, 2022. Plaintiff asserts that although Defendant NaphCare took over the healthcare contract on October 1, 2022, to date, Defendant Stewart has not scheduled any cancer screening for Plaintiff. Liberally construed, Plaintiff states an Eighth Amendment medical care claim against Defendant Stewart.

In Count Five, Plaintiff alleges that Defendant NaphCare has continued the alternate treatment plan and has failed to evaluate and treat Plaintiff's cancer. Liberally construed, Plaintiff has stated an Eighth Amendment claim against Defendant NaphCare.

In Count Six, Plaintiff alleges that medical staff at Tucson's Veteran's Administration hospital have violated his Eighth Amendment rights. He asserts that since January 2021, he has been denied cancer treatment because he is a convicted sex offender, and that pursuant to an agreement between ADC and the Tucson hospital, the Veteran's Administration only works with prisoners who do not have convictions for sex offenses.

The Veteran's Administration is a federal agency and does not act under color of state law. Thus, the Veteran's Administration is not subject to suit under § 1983. *See* 42

U.S.C. § 1983; *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995). The Court will therefore dismiss Defendant "Veteran Administration (Tucson)."

**IV.     Motion for Preliminary Injunction and Temporary Restraining Order**

Whether to grant or deny a motion for a temporary restraining order or preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

**A.     Motion for Temporary Restraining Order**

A temporary restraining order can be issued without notice

> only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; **and** (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis added). *See also* LRCiv 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

Plaintiff has not shown that he will suffer irreparable injury before Defendants can be heard in opposition and has not certified the "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Because the request for a temporary restraining order fails to comply with Rule 65(b)(1)(B), the Court, in its discretion, will deny without prejudice Plaintiff's request for a temporary restraining order. *See* LRCiv 65.1. *See also Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (district court abused its discretion in granting ex parte temporary restraining order "when there was no valid reason for proceeding ex parte and by disregarding the strict procedural requirements of Fed. R. Civ. P. 65(b) for the issuance of such ex parte orders"); *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 643 (S.D. Cal. 1999).

**B.     Motion for Preliminary Injunction**

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff seeks an injunction requiring Defendants to immediately "take [him] to the Cancer Center for cancer screening and evaluation." The Court will require Defendants NaphCare and Shinn to file a response to the portion of the Motion that seeks a preliminary injunction.

**V.     Warnings**

**A.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**B.     Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Within **30 days** of the date this Order is filed, Plaintiff must either pay the $350.00 filing fee and $52.00 administrative fee or file a complete Application to Proceed In Forma Pauperis and a certified six-month trust account statement.

(2)     If Plaintiff fails to either pay the $350.00 filing fee and $52.00 administrative fee or file a complete Application to Proceed In Forma Pauperis within 30 days, the Clerk of Court must enter a judgment of dismissal of this action without prejudice and without further notice to Plaintiff and deny any pending unrelated motions as moot.

(3)     Defendant "Veteran Administration (Tucson)" is **dismissed**.

(4)     Defendants NaphCare, Centurion, Shinn in his official capacity only, Stewart, and Thomas must answer the Complaint.

(5)     The Clerk's Office must prepare service packets for Defendants NaphCare, Centurion, Shinn, Stewart, and Thomas and forward them to the United States Marshal for service.

(6)     No later than **10 days** from the filing date of this Order, the United States Marshal must personally serve copies of the Summons, Complaint, Motion, and this Order on Defendants NaphCare and Shinn pursuant to Federal Rules of Civil Procedure 4(e) and (h) at the addresses below:

> NaphCare, Inc.
> c/o Statutory Agent
> Registered Agents Inc.
> 1846 E. Innovation Park Dr., Ste. 100
> Oro Valley, AZ 85755

> David Shinn
> Director
> Arizona Department of Corrections, Rehabilitation and Entry
> 1601 W. Jefferson
> Phoenix, AZ 85007

(7) No later than **10 days** from the filing date of this Order, the United States Marshal must personally serve copies of the Summons, Complaint, and this Order on Defendants Centurion, Stewart, and Thomas pursuant to Federal Rules of Civil Procedure 4(e) and (h).

(8) The United States Marshal must file a confirmation of service on Defendants within **15 days** from the date of this Order.

(9) The Clerk of Court must email a copy of this Order to Assistant Arizona Attorney General Brad Keogh at BKeogh@azadc.gov and Sarah L. Barnes at slb@bowwlaw.com.

(10) Defendants NaphCare and Shinn in his official capacity only must answer the Complaint or otherwise respond by appropriate motion within **10 days** following service on them.

(11) Defendants NaphCare and Shinn in his official capacity only must respond to Plaintiff's Motion within **10 days** following service on them.

(12) Defendants Centurion, Stewart, and Thomas must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

. . . .

. . . .

(14)   The Clerk of Court must mail Plaintiff a court-approved form for filing an Application to Proceed In Forma Pauperis (Non-Habeas).

Dated this 8th day of December, 2022.

James A. Teilborg
Senior United States District Judge

**Instructions for Prisoners Applying for Leave to Proceed In Forma Pauperis
Pursuant to 28 U.S.C. § 1915 in a Civil Action (Non-habeas) in Federal Court**

You must pay the $350.00 filing fee plus the $52.00 administrative fees for a civil action. If you later file an appeal, you will be obligated to pay the $505.00 filing fee for the appeal.

If you have enough money to pay the full $402.00 filing and administrative fees, you should send a cashier's check or money order payable to the Clerk of the Court with your complaint.

If you do not have enough money to pay the full $402.00 filing and administrative fees, you can file the action without prepaying the fees. However, the Court will assess an initial partial filing fee. The initial partial filing fee will be the greater of 20% of the average monthly deposits or 20% of the average monthly balance in your prison or jail account for the six months immediately preceding the filing of the lawsuit. The Court will order the agency that has custody of you to withdraw the initial partial filing fee from your prison or jail account as soon as funds are available and to forward the money to the Court.

After the initial partial filing fee has been paid, you will owe the balance of the $350.00 filing fee (you will not be required to pay the $52.00 administrative fee). Until the filing fee is paid in full, each month you will owe 20% of your preceding month's income. The agency that holds you in custody will collect that money and forward it to the Court any time the amount in your account exceeds $10.00. These installment fees are calculated on a per-case basis. This means that you will be required to pay 20% of your preceding month's income for **each** civil non-habeas corpus case in which you have an outstanding filing fee balance. For example, if you are making payments toward filing fee balances in two civil non-habeas corpus cases, 40% of your preceding month's income will be collected each month. The balance of the filing fee may be collected even if the action is later dismissed, summary judgment is granted against you, or you fail to prevail at trial.

To file an action without prepaying the filing fee, and to proceed with an action in forma pauperis, you must complete the attached form and return it to the Court with your complaint. You must have a prison or jail official complete the certificate on the bottom of the form and attach a certified copy of your prison or jail account statement for the last six months. If you were incarcerated in a different institution during any part of the past six months, you must attach a certificate and a certified copy of your account statement from each institution at which you were confined. If you submit an incomplete form or do not submit a prison or jail account statement with the form, your request to proceed in forma pauperis will be denied.

Even if some or all of the filing fee has been paid, the Court is required to dismiss your action if: (1) your allegation of poverty is untrue; (2) the action is frivolous or malicious; (3) your complaint does not state a claim upon which relief can be granted; or (4) your complaint makes a claim against a defendant for money damages and that defendant is immune from liability for money damages.

If you file more than three actions or appeals which are dismissed as frivolous or malicious or for failure to state a claim on which relief can be granted, you will be prohibited from filing any other action in forma pauperis unless you are in imminent danger of serious physical injury.

Revised 12/1/20

_____
Name and Prisoner/Booking Number

_____
Place of Confinement

_____
Mailing Address

_____
City, State, Zip Code

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

_____ ,

Plaintiff,

v.

_____ ,

Defendant(s).

CASE NO. _____

APPLICATION TO PROCEED
IN FORMA PAUPERIS
BY A PRISONER
CIVIL (NON-HABEAS)

I, _____, declare, in support of my request to proceed in the above entitled case without prepayment of fees under 28 U.S.C. § 1915, that I am unable to pay the fees for these proceedings or to give security therefor and that I believe I am entitled to relief.

In support of this application, I answer the following questions under penalty of perjury:

1. Have you ever before brought an action or appeal in a federal court while you were incarcerated or detained?
   ☐Yes   ☐No   If "Yes," how many have you filed? _____.
   Were any of the actions or appeals dismissed because they were frivolous, malicious, or failed to state a claim upon which relief may be granted?   ☐Yes   ☐No   If "Yes," how many of them? _____.

2. Are you currently employed at the institution where you are confined?   ☐Yes   ☐No
   If "Yes," state the amount of your pay and where you work. _____
   _____

3. Do you receive any other payments from the institution where you are confined?   ☐Yes   ☐No
   If "Yes," state the source and amount of the payments. _____
   _____

1

4. Do you have any other sources of income, savings, or assets either inside or outside of the institution where you are confined? ☐Yes ☐No
   If "Yes," state the sources and amounts of the income, savings, or assets. _____

I declare under penalty of perjury that the above information is true and correct.

_____ _____
        DATE                                     SIGNATURE OF APPLICANT

### ACKNOWLEDGEMENT OF COLLECTION OF FILING FEES FROM TRUST ACCOUNT

I, _____, acknowledge that upon granting this Application, the Court will order designated correctional officials at this institution, or any other correctional institution to which I am transferred, to withdraw money from my trust account for payment of the filing fee, as required by 28 U.S.C. § 1915(b).

The Court will require correctional officials to withdraw an initial partial payment equal to 20% of the greater of:
   (A) the average monthly deposits to my account for the six-month period preceding my filing of this action, or
   (B) the average monthly balance in my account for the six-month period preceding my filing of this action.

After the initial payment, if the amount in my account is at least $10.00, the Court will require correctional officials to withdraw from my account 20% of each month's income and forward it to the Court until the required filing fee is paid in full.   I understand that I am required to pay the entire fee, *even if my case is dismissed by the Court before the fee is fully paid.*

I further understand that if I file more than one action, correctional officials will be ordered to withdraw 20% of each month's income, for each action, simultaneously.   Accordingly, if I have filed two actions, correctional officials will withdraw 40% of my income each month; three actions will require 60% of my income each month, etc.

_____ _____
        DATE                                     SIGNATURE OF APPLICANT

### CERTIFICATE OF CORRECTIONAL OFFICIAL
### AS TO STATUS OF APPLICANT'S TRUST ACCOUNT

I, _____, certify that as of the date applicant signed this application:
         (Printed name of official)
The applicant's trust account balance at this institution is:                $_____
The applicant's average monthly deposits during the prior six months is:     $_____
The applicant's average monthly balance during the prior six months is:      $_____
The attached certified account statement accurately reflects the status of the applicant's account.

_____
DATE         AUTHORIZED SIGNATURE         TITLE/ID NUMBER         INSTITUTION

Revised 12/1/20