JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Francis,<br>                Plaintiff,<br>v.<br>David Shinn, et al.,<br>                Defendants. | No. CV 22-02071-PHX-JAT (DMF)<br><br>**ORDER** |

Plaintiff James Francis, who is currently confined in the Arizona State Prison Complex-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and has paid the filing and administrative fees. Before the Court is Plaintiff's Motion for Emergency Preliminary Injunction (the "Motion") (Doc. 2).

The Court will grant the Motion and will refer this case to the Magistrate Judge for all pretrial proceedings.

**I.   Background**

In his Complaint, Plaintiff sues NaphCare, Centurion, former Arizona Department of Corrections, Rehabilitation and Reentry (ADC) Director David Shinn,[1] Nurse Practitioner Siji Thomas, and Doctor Rodney Stewart. On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care claims against each Defendant. (Doc. 5.) The Court ordered expedited service on

---

[1] David Shinn retired on January 4, 2023. The Court will therefore substitute Deputy Director Joe Profiri, in his official capacity only, for purposes of Plaintiff's request for injunctive relief. Fed. R. Civ. P. 25(d).

1  Defendants NaphCare and Shinn and ordered them to answer the Complaint and respond
2  to the Motion on an expedited basis. The Court also ordered Defendants Centurion,
3  Stewart, and Thomas to answer the Complaint. (*Id.*)

4  On December 27, 2022, Defendants NaphCare and Shinn answered the Complaint
5  and filed a Response opposing Plaintiff's Motion. (Docs. 12-14.) On January 3, 2023,
6  Plaintiff filed a Reply to Defendants' Response. (Doc. 17.)

**II.  Injunctive Relief Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citation omitted).

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest mostly concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted). Regardless,

TERMPSREF

- 2 -

"[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Further, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination" and makes it difficult for a party to procure supporting evidence in a form that would be admissible at trial. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). As a result, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In its determination on a motion for a preliminary injunction, "a court may properly consider evidence that would otherwise be inadmissible at trial." *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. CV 15-04023 BRO (Ex), 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015); *see Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (district court did not abuse its discretion by considering "unverified client complaints" and the plaintiff's counsel's interested declaration when it granted a preliminary injunction); *Flynt Distrib. Co.*, 734 F.2d at 1394 (the district court has discretion to rely on hearsay statements when deciding whether to issue a preliminary injunction). A court may also consider evidence or developments that postdate the pleadings. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

**III.  Motion for Injunctive Relief**

In his Motion, Plaintiff asks the Court to issue an emergency order requiring

Defendants to "immediately take Plaintiff to the Cancer Center for cancer screening and evaluation." (Doc. 2 at 1.) Plaintiff asserts that Defendants "know" he has cancer "from their own personal medical views" but do not know what type of cancer he has because Defendants have delayed his cancer screening. (*Id.* at 1-2.) Plaintiff claims his condition has become life-threatening; he "continues to urinate blood weekly"; and he suffers vomiting, nausea, weight loss, loss of appetite, difficulty sleeping, and extreme chest pain. (*Id.* at 2.) Plaintiff also suffers extreme swelling in his legs, feet, and stomach. (*Id.*)

**IV.  Discussion**

    **A.  Relevant Facts**

        **1.  Allegations in the Complaint**

On January 11, 2022, Plaintiff alerted prison staff that he was urinating blood. (Doc. 1 at 6.) Staff came to the restroom, saw Plaintiff's blood in the toilet, and activated an emergency Incident Command System. (*Id.*) Plaintiff was taken to Cook Unit's medical department, where he was evaluated by medical staff. (*Id.*) Medical staff told Plaintiff it was "normal to have bleeding from cancer" and that his condition would be closely monitored. (*Id.*)

Defendant Thomas evaluated Plaintiff and told him that she did not believe his cancer was causing him to urinate blood and that she "felt that it was normal for males to sometime[s] bleed" while urinating due to injury, rather than cancer. (*Id.* at 12.) Plaintiff told Defendant Thomas that he had not suffered an injury and asked her to send him to the hospital to "see what is happening to him." (*Id.* at 13.) Defendant Thomas told Plaintiff she would approve a hospital visit if he urinated blood three days consecutively, but his bleeding had stopped at that time, and he could return to his unit. (*Id.*) Plaintiff asked Defendant Thomas about his cancer consultation, and Thomas told him that she was "waiting to see if [his] condition would wors[]en" and that she did not believe his cancer was "deadly at this point." (*Id.*)

On February 22, 2022, Plaintiff complained to prison staff that he was having heart problems and pain in his chest and stomach and needed to see medical staff. (*Id.* at 7.)

Plaintiff was taken to Cook Unit for medical evaluation. (*Id.*) Medical staff told Plaintiff his chest pain was due to his cancer and that he would experience this type of pain until "they" got his cancer under control. (*Id.*) Defendant Thomas conducted an EKG and told Plaintiff the EKG showed he was having "heart problems," but she would "just monitor him to see if his condition wors[]en[ed]." (*Id.* at 13.) Plaintiff asked Defendant Thomas to schedule him to see a cardiologist. (*Id.*) Defendant Thomas told him that the pain he was experiencing was "normal" because of his "suspected cancer" and that she would continue to monitor his condition. (*Id.*)

Subsequently, Plaintiff's cancer spread to his gall bladder. (*Id.* at 7.) On July 5, 2022, Plaintiff experienced intense pain and complained to prison staff that he was again urinating blood. (*Id.*) Staff saw the blood in the toilet, and Plaintiff was taken to Cook Unit. (*Id.*) Defendant Thomas evaluated Plaintiff and told him that his gall bladder was infected and that it was "possible" the cancer had spread to his gall bladder. (*Id.* at 14.) Defendant Thomas told Plaintiff she would submit a request for an evaluation at the Cancer Center, which would take at least two to three months for approval. (*Id.*) Plaintiff told Defendant Thomas his condition warranted emergency treatment, and Thomas responded that his cancer would not "kill him in 2-3 months." (*Id.*)

On September 7, 2022, Defendant Thomas called Plaintiff to the medical unit. Defendant Thomas was "angry" and told Plaintiff to stop submitting health needs requests (HNRs) that stated he had leukemia because Plaintiff's specific type of cancer had not been determined. (*Id.* at 8.) Defendant Thomas also told Plaintiff that if he did not stop using the word "leukemia," he would receive a disciplinary ticket for lying to medical and prison staff. (*Id.*) Plaintiff asked Defendant Thomas about the status of his cancer evaluation. Defendant Thomas told Plaintiff the request was still under review. (*Id.* at 14.)

On September 10, 2022, Defendant Thomas called Plaintiff to the medical unit and told him that Defendant Stewart had cancelled a consultation with a urologist for Plaintiff's cancer. (*Id.* at 8.) Defendant Thomas told Plaintiff that Defendant Stewart had advised Thomas that Centurion would no longer be the medical provider for ADC prisoners as of

October 1, 2022, and that Plaintiff would have to wait for his cancer evaluation until the new provider took over. (*Id.*)

On September 13, 2022, Plaintiff again urinated blood and alerted medical staff that he needed medical attention. (*Id.* at 9.) Staff again saw the blood in the toilet and again took him to Cook Unit for evaluation. (*Id.*) Defendant Thomas evaluated Plaintiff and had him urinate in a cup. (*Id.* at 15.) Plaintiff went to the restroom and came back with a "cup of blood." (*Id.*) Defendant Thomas had Plaintiff wait at the medical unit for six hours and urinate in a cup every two hours. (*Id.*) The third time Plaintiff urinated, there was still blood in his urine. (*Id.*) Plaintiff was told his "PSA" blood test "show[ed] cancer," but Plaintiff would have to "wait until the new medical provider comes" on October 1, 2022. (*Id.*)

On October 1, 2022, Defendant NaphCare took over the healthcare contract. Sometime in October 2022, Defendant Thomas called Plaintiff to Cook Unit and told him that she would no longer be his provider because Defendant NaphCare was transferring her to Meadows Unit. (*Id.* at 17.) Defendant Thomas told Plaintiff that NP Adams would work with Plaintiff regarding his cancer screening. (*Id.*) Since then, Defendant NaphCare has not scheduled a cancer evaluation for Plaintiff, and NP Adams has told Plaintiff that she has "done all she can do" to obtain approval from NaphCare's medical board for a cancer consultation. (*Id.*)

### 2. Plaintiff's Medical Records

Plaintiff's medical records, submitted by Defendants in support of their Response, reflect the following:

On June 26, 2022, Plaintiff underwent a CT of his abdomen and pelvis without contrast, which had been ordered by Defendant Thomas. (Doc. 14-1 at 2.) The CT showed a 2.8 cm x 2.1 cm mass along the left wall of the urinary bladder suggestive for malignancy and cholelithiasis (gallstones). (*Id.*) Cystoscopy was recommended. (*Id.*)

On July 13, 2022, Defendant Thomas ordered an offsite prostate specific antigen test. (*Id.* at 37.) Plaintiff underwent the test on July 14, 2022. (*Id.*) Defendant Thomas

1 noted that the results were "essentially normal," and no further action was necessary. (*Id.*
2 at 39.)

3       On September 22, 2022, Plaintiff saw Nurse Practitioner Maryjoy D. Balbarino at
4 Arizona Urology Telemedicine. (*Id.* at 4.) Balbarino noted that Plaintiff had reported
5 "painless gross hematuria," for which a CT had been ordered, and Plaintiff had been
6 referred for evaluation of a bladder mass found on the CT. (*Id.*) Balbarino noted that she
7 discussed office cystoscopy with Plaintiff, and Plaintiff agreed to undergo the procedure,
8 which Balbarino noted would be scheduled for another day. (*Id.* at 4-5.)

9       On September 28, 2022, Plaintiff was seen at Florence Anthem General Surgery
10 Clinic for a general surgery consultation. (*Id.* at 40.) The presumed diagnosis was noted
11 as symptomatic cholelithiasis and umbilical hernia, and the recommended treatment was
12 noted as laparoscopic cholecystectomy and umbilical hernia repair. (*Id.*) The
13 recommendation was to schedule surgery after a workup of Plaintiff's urinary bladder
14 mass. (*Id.*)

15       On September 29, 2022, Defendant Thomas submitted an offsite consultation
16 request for the cystoscopy. (*Id.* at 6.) The request was authorized the next day. (*Id.* at 7.)
17 An urgent Off-Site/Consult Order noted that the preferred date for the cystoscopy was
18 October 4, 2022, or the first available appointment. (*Id.* at 9.) The cystoscopy initially
19 was scheduled for December 6, 2022, but that appointment was canceled by the clinic
20 because the doctor was unavailable. (*Id.*) The cystoscopy is now scheduled for January
21 2023. (*Id.*)

22       On November 28, 2022, Plaintiff was sent to the Mountain Vista Medical Center
23 Emergency Department for blood in his urine and upper right quadrant pain. (*Id.* at 22.)
24 Plaintiff saw Dr. Brian Gallman and reported that his hematuria had started in August 2021
25 and had not ceased. Plaintiff also reported that he was sent to the Emergency Department
26 "to have his hematuria shock now because he needs a surgery" and could not "have
27 hematuria before a surgery." (*Id.*) Dr. Gallman noted that Plaintiff should be on
28 ciprofloxacin 250 mg every 12 hours for 5 to 7 days and recommended further outpatient

evaluation by a urologist. (*Id.* at 17.) Plaintiff was referred to Defendant Stewart for follow-up care. (*Id.*)

### B. Defendants' Opposition

Defendants oppose Plaintiff's Motion. (Doc. 14.) They advance several bases for their opposition: Plaintiff's Motion is "wholly unsupported by any medical evidence or opinion"; Plaintiff does not address the *Winter* factors; the Motion contains several statements that are inconsistent with his "actual health condition"; and the Motion is moot because Plaintiff "has been and is being sent out with respect to the bladder mass just discovered at the end of August 2022." (*Id.* at 1.)

Defendants contend "[t]here is no recommendation by urology or even the doctors at the recent hospital visit that Plaintiff needs to go to a cancer screening at this point, nor that he has been diagnosed with cancer." (Doc. 14 at 2.) Defendants concede that the urologist noted a "suggestion of malignancy" from the CT of Plaintiff's bladder but noted that the urologist recommended a biopsy as the next step. (*Id.* at 2 n.3.) Defendants assert that Plaintiff is being "screened" for potential cancer in light of the bladder mass, and his hematuria has been "addressed beyond urology." (*Id.* at 2.) Defendants also note that there is no reference in Plaintiff's medical records of any complaints of significant weight loss or nausea and vomiting. (*Id.*) Thus, according to Defendants, Plaintiff's request for injunctive relief is moot. (*Id.* at 3.)

With respect to the *Winter* factors, Defendants further argue that Plaintiff has not and cannot demonstrate he is likely to succeed on the merits of his claim because there has been no deliberate indifference with respect to the treatment for his bladder mass. (*Id.*) Defendants contend Plaintiff has not and cannot demonstrate that he is likely to suffer irreparable harm because he "cannot rely on possible injury he might still suffer." (*Id.*) Defendants also assert that Plaintiff cannot establish that the balance of equities tips in his favor because "he is seeking injunctive relief that he is already receiving." (*Id.* at 4.) Defendants argue that for the same reason, Plaintiff cannot demonstrate that an injunction is in the public interest. (*Id.*)

1   **C.      Plaintiff's Reply**

2   In his Reply, Plaintiff states that between July and September 2022, he had 12 medical Incident Command System activations for emergency treatment for what Defendants "believed is a form of cancer that has become aggressive." (Doc. 17 at 2.) Plaintiff contends Defendants are "intentionally causing him to suffer death from the cancer," and the continued delay in treatment "will cause immediate death." (*Id.* at 3-4.) Plaintiff argues that "every medical staff" has said Plaintiff needs emergency treatment to determine what type of cancer he has, but "everybody is 'kicking the can down the road.'" (*Id.* at 4.)

**D.      Analysis**

   **1.      Mootness**

Defendants contend Plaintiff's request for injunctive relief is moot because he is scheduled to undergo the specialist-recommended cystoscopy in January 2023. Although Plaintiff's requested relief is that he undergo "cancer screening," it is not an open-ended request for an appointment at some date long into the future. Since the specialist's initial recommendation in June 2022 that Plaintiff undergo the cystoscopy, no appointment has taken place and there is no guarantee the January 2023 appointment will take place. Thus, the Court concludes Plaintiff's request for injunctive relief is not moot.

   **2.      *Winter* Factors**

      **a.      Likelihood of Success**

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX*

*Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

Defendants do not argue that Plaintiff's bladder mass, hematuria, and pain do not amount to serious medical needs. Plaintiff's medical records demonstrate that he has a serious medical need. *See McGuckin*, 974 F.2d at 1059–60.

Courts have routinely found that failure to follow the specialist's recommendation may amount to a course of treatment that is medically unacceptable and exhibit deliberate indifference. *See Colwell*, 763 F.3d at 1069 (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta v.*

*Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (the defendant physician's refusal to follow the advice of treating specialists could constitute deliberate indifference to serious medical needs); *McNearney v. Wash. Dep't of Corrs.*, C11-5930 RBL/KLS, 2012 WL 3545267, at *26 (W.D. Wash. June 15, 2012) (in granting a preliminary injunction for specialist treatment, the district court found that the prisoner plaintiff showed a likelihood of success on the merits of her Eighth Amendment claim where the defendants failed to follow an orthopedic surgeon's strong recommendation for further orthopedic evaluation).

Plaintiff's medical records demonstrate that a cystoscopy of the bladder mass was first recommended by a radiologist on June 26, 2022, when Plaintiff underwent the CT of his abdomen and pelvis. (Doc. 14-1 at 2.) Nearly three months later, on September 22, 2022, Plaintiff was seen at Arizona Urology, discussed the cystoscopy with NP Balbarino, and agreed to undergo the procedure "another day." (*Id.* at 4-5.) On September 28, 2022, Plaintiff had a general surgery consultation, and the next day, Defendant Thomas submitted an offsite consultation request for the cystoscopy. Although the Consult Order was deemed urgent, the cystoscopy was scheduled for December 6, 2022, more than five months after the original recommendation that Plaintiff undergo the procedure. To date, the cystoscopy has not been performed, despite recommendations from a radiologist, a urology specialist, and a general surgeon.

Defendants' only explanation for the delay in Plaintiff undergoing the cystoscopy is that Plaintiff's December 6, 2022 appointment was canceled because the doctor was unavailable. Defendants are charged with providing necessary medical care to Plaintiff and the fact that there was a scheduling conflict with the urologist does not absolve them of their responsibility. Defendants provide no argument that the delay is acceptable. *See Estelle*, 429 U.S. at 103 (Eighth Amendment applies even to "less serious cases, [where] denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose"); *McGuckin*, 974 F.2d at 1060 (pain and anguish suffered by prisoner constituted harm sufficient to support a § 1983 action).

TERMPSREF

- 11 -

On this record, Plaintiff has established a likelihood of success on the merits of his deliberate indifference claims. Thus, the first *Winter* factor is met.

### b. Irreparable Harm

The second *Winter* factor requires Plaintiff to demonstrate that, absent an injunction, he will be exposed to irreparable harm. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see Winter*, 555 U.S. at 22. "[T]here must be a presently existing threat of harm, although injury need not be certain to occur." *Villanueva v. Sisto*, CIV S-06-2706 LKK EFB P, 2008 WL 4467512, at *3 (E.D. Cal. Oct. 3, 2008) (citing *FDIC v. Garner*, 125 F.3d 1272, 1279– 80 (9th Cir. 1997)).

To support a mandatory preliminary injunction for specific medical treatment, Plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674. Delays in necessary treatment and pain can constitute irreparable harm. *See Porretti*, 11 F.4th at 1050 ("the deprivation of [a prisoner's] constitutional right to adequate medical care is sufficient to establish irreparable harm") (quoting *Edmo v. Corizon, Inc.*, 935 F.3d 757, 798) (9th Cir. 2019)); *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (irreparable harm includes delayed and/or complete lack of necessary treatment, and increased pain); *McNearney*, 2012 WL 3545267, at *14 (finding a likelihood of irreparable injury where the evidence showed that the plaintiff continued to suffer unnecessary pain due to the defendants' inadequate treatment plan); *Von Collin v. Cnty. of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1989) ("[d]efendants do not argue that pain and suffering is not irreparable harm, nor could they").

Defendants contend Plaintiff has not shown he is likely to suffer irreparable harm because he "cannot rely on possible injury he might still suffer." (*Id.*) Plaintiff's medical records demonstrate that a specialist believed the bladder mass found in June 2022 "suggested" malignancy. More than six months later, Plaintiff has not undergone the specialist-recommended cystoscopy to determine whether the mass is malignant. Plaintiff

also states that he continues to urinate blood and suffer vomiting, nausea, weight loss, loss of appetite, difficulty sleeping, extreme chest pain, and swelling in his extremities. (Doc. 2 at 2.) *See S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (a declarant has personal knowledge of his or her own symptoms). On this record, Plaintiff's injury is not speculative; he is suffering harm in the form of delayed or lack of treatment and ongoing pain. *See Rodde*, 357 F.3d at 999. Defendants' failure to provide medical treatment for Plaintiff's pain and serious medical need is depriving him of adequate medical care, thereby establishing irreparable harm. *See Porretti*, 11 F.4th at 1050. Accordingly, Plaintiff satisfies the second *Winter* element.

### c. Balance of Equities and Public Interest

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Porretti*, 11 F.4th at 1047. Moreover, "the public has a strong interest in the provision of constitutionally-adequate health care to prisoners." *McNearney*, 2012 WL 3545267, at *16 (quoting *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009)); *see Farnam v. Walker*, 593 F. Supp. 2d 1000, 1017 (C.D. Ill. 2009) (holding that the public had an interest in the maintenance of prisoner's health during the pendency of the lawsuit).

Defendant essentially argue that Plaintiff cannot show the balance of equities tips in his favor or that the public interest weighs in his favor because his request for injunctive relief is moot. As stated above, the request for injunctive relief is not moot. Without an injunction, Plaintiff risks going without diagnosis of possible cancer, and consequently, any treatment for his serious medical need. Accordingly, the balance of equities tips sharply in Plaintiff's favor.

Furthermore, it is in the public interest to provide Plaintiff the specialist-recommended diagnostic procedure and any recommended specialist treatment to ensure

TERMPSREF

- 13 -

Plaintiff receives constitutionally adequate health care. Thus, the public interest weighs in favor of granting an injunction.

In sum, the Court finds that Plaintiff has satisfied the *Winter* factors.

### 3. Remaining Factors

Because of the substantial delays in addressing Plaintiff's need for specialty medical care, ordering Defendants to immediately provide the appointment for the cystoscopy and to immediately comply with any specialist-recommended treatment is the most narrowly drawn relief necessary to correct the harm identified by Plaintiff. *See* 18 U.S.C. § 3626(a)(2).

In this instance, the bond requirement can be waived as there is no request for a bond nor any showing that Defendants would incur compensable costs or damages if an injunction issues. *See Johnson*, 572 F.3d at 1086 (the district court may dispense with the filing of a bond).

For the above reasons, the Court will grant Plaintiff's request for an injunction with respect to ordering that, if it has not happened already, Plaintiff be taken immediately to undergo a cystoscopy of the bladder mass. Defendants will also be ordered to immediately provide any treatment or follow up recommended by the specialist at or following the cystoscopy encounter. The Court expects that Plaintiff will notify the Court if any recommended treatment is not provided.

**IT IS ORDERED:**

(1) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Deputy Director Joe Profiri, in his official capacity only, is **substituted** for Defendant Shinn.

(2) Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 2) is **granted** as follows:

    (a) Defendants must ensure that Plaintiff undergoes a cystoscopy of his bladder mass within **ten (10) days** of the date of this Order.

    (b) Within **fifteen (15) days** of the date of this Order, Defendants must file a Notice indicating that Plaintiff received the cystoscopy and

attach a copy of the medical record documenting the results of the cystoscopy.

   (c) Defendants must immediately provide any treatment or follow up recommended by the offsite specialist.

 (3) This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct the harm. *See* 18 U.S.C. § 3626(a)(2).

 (4) This Order is in effect until further notice from the Court.

 (5) Plaintiff is not required to post bond.

 (6) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 20th day of January, 2023.

            James A. Teilborg
            Senior United States District Judge

TERMPSREF

- 15 -